*799 OPINION OF THE COURT
Anne G. Feldman, J.
Defendant is charged with criminally negligent homicide and endangering the welfare of a child. She has moved this court to dismiss the indictment in furtherance of justice pursuant to CPL 210.40.
The charges against defendant arise out of the drowning death of her nine-month-old daughter Lucesita. The evidence against her consists mostly of several uncounseled statements she made at the hospital and to the District Attorney.
On January 12, 1995, at approximately 2:45 p.m., defendant placed her almost three-year-old daughter into an empty bathtub and opened the faucet, allowing the water to run into the tub’s open drain. When she went into the bedroom to get some clothes for the child, she found that her infant daughter, Lucesita, had awakened from her nap. Defendant then placed Lucesita into the bathtub with her sister. Warning the older child not to block the drain, she went into the adjoining kitchen for what she later recalled to be between three and five minutes to prepare food for Lucesita. She explained that as she stood at the stove stirring the food, she suddenly had a "bad feeling” and quickly returned to the bathroom to find the older girl standing outside of the tub and Lucesita floating in it. Defendant immediately summoned her common-law husband who instructed her to call 911. However, rather than take the time to answer the questions of the 911 operator, he took the child in his arms and ran with her to nearby Wyckoff Hospital while defendant stayed home with her two other children. The hospital officials instructed defendant to come to the hospital which she did when a family member arrived to care for the children. At 3:55 p.m., while being questioned at the hospital defendant was told that Lucesita had been pronounced dead five minutes earlier.
A trial court may dismiss an indictment in furtherance of justice when "such dismissal is required as a matter of judicial discretion by the existence of some compelling factor, consideration or circumstance clearly demonstrating that conviction or prosecution * * * would constitute or result in injustice” (CPL 210.40 [1]). The exercise of this discretion must be predicated upon a "sensitive balance” between the interests of the indi *800 vidual and State (People v Clayton, 41 AD2d 204, 208) and should be used "in the unusual case that cries out for fundamental justice beyond the confines of conventional considerations”. (People v Belge, 41 NY2d 60, 62-63 [Fuchsberg, J., concurring].) Where the ends of justice will be served the court need not depend directly on the legal or factual merits of the charge or even on the guilt or innocence of the accused (People v Clayton, supra, at 206).
In this court’s view, this case falls within the parameters designated appropriate for this unusual remedy. In reaching this conclusion the court has examined and considered individually and collectively the applicable criteria set forth in CPL 210.40 (1): (a) the seriousness and circumstances of the offense; (b) the extent of harm caused by the offense; (c) the evidence of guilt, whether admissible or inadmissible at trial; (d) the history, character and condition of the defendant; (e) any exceptional serious misconduct of law enforcement personnel in the investigation, arrest and prosecution of the defendant; (f) the purpose and effect of imposing upon the defendant the sentence authorized for the offense; (g) the impact of a dismissal upon the confidence of the public in the criminal justice system; (h) the impact of a dismissal on the safety or welfare of the community; (i) where the court deems it appropriate, the attitude of the complainant with respect to the motion; (j) any other relevant fact indicating that judgment of conviction would serve no useful purpose.
While any case involving the unnatural death of a child is of the utmost seriousness, the circumstances here raise a serious question of whether defendant’s failure to perceive the risk of leaving her children unattended in a bathtub as she remained nearby constitutes a grave deviation from the standard of care that a reasonable person would exercise in the same situation (see, Penal Law § 15.05 [4]). To this court it seems much more a tragic accident resulting from an exercise of bad judgment. Indeed, based only on a marginally acceptable presentation of a prima facie case, the Grand Jury rejected the higher count of reckless misconduct, returning an indictment only for the lesser charge of criminally negligent homicide.
What compels this court after much contemplation to dismiss the indictment is its view that the prosecution of this defendant for a grave mistake that will haunt her forever has unwarranted and excessive repercussions not only for her but for her other children. Solely because of this incident defendant’s two older children were immediately removed from her *801 home and are now in foster care, as was a baby with whom she was pregnant at the time and who was born this summer.
A petition for child abuse was initiated in Family Court as to defendant’s two older children on January 17, 1995 and subsequently as to defendant’s newborn child. Understandably, a hearing on that petition, which is based solely on allegations arising out of Lucesita’s death, has been adjourned. The outcome of this case may have a significant impact on the Family Court proceeding. In any hearing pursuant to article 10 of the Family Court Act "proof of the abuse or neglect of one child shall be admissible evidence on the issue of the abuse or neglect of any other child of * * * the respondent.” (Family Ct Act § 1046 [a] [i].) The preponderance of the evidence required for a finding that Lucesita was abused would of course be supplied by a conviction herein (see, Family Ct Act § 1046 [b]). Accordingly, the risk of a conviction here impacts not only on defendant but on her young children as well.
There is no question that defendant’s actions led to the death of her child. However, that these actions evidence criminal negligence is highly questionable. The prosecution concedes that the evidence against defendant is based primarily on at least four separate statements apparently given by defendant in Spanish and interpreted by the social workers or police who questioned her. In the hours following this incident defendant was questioned by two detectives, a hospital social worker, a child welfare agency caseworker, and an Assistant District Attorney. A comparison of these statements reflects a significant amount of confusion, apparently attributable to a language barrier. It is unclear whether this confusion is attributable to inaccurate translations of defendant’s statements or to her failure to understand some of the questions put to her. What is clear throughout all her statements is that she was distraught over the death of her baby and that she had naively overestimated her three year old’s capacity to follow instructions.
In an effort to discredit defendant’s estimate of how long she had been absent from the bathroom, the prosecution presented the testimony of a detective who had gone to defendant’s apartment after the baby’s death who said that it took him nine minutes to fill the tub with water. However, the methodology employed by this witness in reaching this conclusion was highly unscientific and unreliable. In the first place, it was not clear from defendant’s statements how much water there was in the tub when she discovered her baby in it; secondly, the detective’s "test” failed to take into account the amount of wa *802 ter which would have been displaced by the weight of the children in the tub.
Based on this evidence, it is problematic that a jury would find defendant’s behavior a gross deviation from the norm. However, the mere pendency of this indictment has already had draconian consequences for both defendant and, more importantly, for her three living children.
Defendant has had no prior contact with the criminal justice system. On several occasions this court directed the District Attorney’s office to bring to its attention any other instances of abuse or mistreatment by this defendant of her children. No such information was produced or alleged in the District Attorney’s opposing papers.
It is not disputed that defendant has fully cooperated with the Child Welfare Administration, regularly visiting her children. Her common-law husband who may be a drug user is no longer involved in her life.
This court has had ample opportunity to observe defendant’s demeanor in the courtroom. She appears to be deeply affected by the death of her daughter and to have fully accepted responsibility for it. Accordingly, a felony conviction and probation, as proposed by the prosecution, would serve no useful purpose. Rather her continued supervision by the Family Court in a parenting skill program which defendant is already attending would be far more effective. The decision as to when defendant may be reunited with her children is best made by the Family Court. Unfortunately, the pendency of this indictment and defendant’s possible conviction under it (by plea or after trial) as a practical matter could influence and delay that decision. With every passing day in which defendant’s children are separated from her, their future welfare is jeopardized. The suffering and confusion this separation must already have caused the children is incalculable.
The dismissal of this case will neither undermine the criminal justice system nor jeopardize the safety or welfare of the community. Indeed were the public aware that this indictment represents an impediment to the unification of this family and the prolonged placement of three young children in an overburdened foster care system, it would welcome the dismissal as a fair and compassionate administration of justice.
This case is a reflection of a terrible tragedy; a parent made a fatal decision. She will always bear the burden of her grave misjudgment. However, neither she nor her children deserve to be further victimized by the stigma and repercussions of a *803 criminal prosecution. This case belongs in Family Court which is charged with determining the future of the children. Its determination should be based solely on the best interests of the children. Its task should not be complicated by a criminal proceeding.
Accordingly, defendant’s motion to dismiss the indictment in furtherance of justice is granted.